Case number 21-5242, Crowley Government Services, Inc., appellants versus General Services Administration, and Robin Carnahan in her official capacity as Administrator of the General Services Administration. Mr. Boland for the appellant, Mr. Hazel for the appellant. Good morning, counsel. Mr. Boland, please proceed when you're ready. Good morning, your honors. I'm James Boland representing Crowley Government Services. May it please the court. As this court made clear in Toodle, the Tucker Act cannot deprive a district court of jurisdiction if the claims court does not have jurisdiction over the complaint. Count one of Crowley's complaint below alleges that GSA is violating the Contract Disputes Act finality clause. Crowley seeks declaratory and injunctive relief only to compel GSA to stop conducting unlawful audits and audits that are in direct conflict with the final and conclusive decisions of TRANSCOM's contracting officer, the decisions that were issued under the CDA. Neither the district court nor the government has yet explained the basis for the claims court jurisdiction over these specific non-monetary claims against GSA. The district court did not even mention the CDA in its decision dismissing Crowley's case for lack of jurisdiction, yet that is central to count one of Crowley's case here. In fact, the district court in its decision, I think all but admitted or at least acknowledged the struggle to come up with what jurisdiction would exist in the claims court saying, and this is on JA 263, that this complaint does not fit nicely within the criteria for claims court jurisdiction. Under Toodle, this court's precedent, that means the Tucker Act does not impliedly forbid jurisdiction in the district court. The government, I think on page 22 of the government's brief is- So can I ask you a question about the Toodle rule so that you've been relying on, or is it Toodle? Is it Toodle, yes. So under that rule, would that even accommodate a situation in which it's by virtue of artful pleading that a party styles its complaint so that it would not fit within the claims court's jurisdiction? Because as I understand the doctrine, at least in circumstances in which it's only a matter of artful pleading that a claim is configured so that it wouldn't fit within the claims court's jurisdiction. Well, then we disregard the artful pleading and think about the complaint as if it would be configured without the kind of artful effort to avoid claims court jurisdiction. And we reconceptualize it as a case that would fit within the claims court's jurisdiction for purposes of assessing whether there's APA jurisdiction in other courts. Well, and Your Honor, to answer the question, in this case, I don't think the district court found that this was all artful pleading. And I think that if there's a finding that that's all what's happening and a complaint is carefully crafted to allege what would be a claim under the Tucker Act, then that, I mean, let me put it this way. Ultimately, the claims court, you have to identify the claims court's basis for jurisdiction over the claim that's raised. And in this case, in count one, we have alleged specifically that GSA has violated the finality clause of the Contract Dispute Act. That's a claim, that's a non-monetary claim. It alleges a statutory violation. And it's a claim that we are not aware of any reported decision out of any court addressing this issue where another- So I guess I'm not necessarily saying that this would mean that you would lose. I'm only asking for my own purposes and understanding the way you conceive of the doctrines fitting together. And I guess for the purposes of the TUDOR rule, one way to look at it is to say, look, we just look at the claim that's been asserted and we ask whether that claim could come within the claims court's jurisdiction. If it does, then it triggers the possibility that that jurisdiction's exclusive. If it doesn't, then we never just even get into the inquiry, which is where you started. And my only question is, is that true or do we at least ask whether the claim that's been asserted could be brought within the claims court or a claim that's basically the same thing. It's just, it's not artfully pled to avoid claims court jurisdiction. Should we look beyond actually the claim that's been asserted and we look to something that at least expands the circle so that it encompasses the non-artfully pleaded variant of that claim to determine whether it would fit within the claims court's jurisdiction? Yes. Haven't we been told to look at the relief sought? And here, the relief sought is, I think outweighs the monetary. You know, you want GSA to quit auditing these things that are not transportation bills, which I think is the only thing they can under the 1940 Act. But the way I've looked at this case is to look at what relief you're seeking. Yes, Your Honor. And I think to answer the previous question as well, I think that you do look at the relief and I think that is what the case law and precedent says. But I think there is that extra step where you do have to make sure that the complaint is not simply artful pleading to avoid claims court jurisdiction. All right, so you are seeking non-monetary relief to a certain extent when you're looking at the relief, but we have to determine whether or not it's non-negligible. That's my understanding of the test. So how do we go about evaluating that in this case? So the question of whether our claim is in essence for money, Kidwell and the line of cases, Tootles, Smalls, Vietnam Veterans, those decisions have all made very clear that you have to look at whether there's considerable value to the non-monetary aspect of the claim. And of course, in this case, we're not explicitly seeking money. So you're sort of looking at whether there would be, is it negligible in comparison? And I think the 10th Circuit and Third Circuit decisions in Hahn and Francis Hite underlying this court's decision in Kidwell, those cases talked about prospective relief. Is the non-monetary relief, does it provide prospective relief? Does it affect future actions or ongoing relationships? That's exactly what Crowley is seeking here. You know, we are performing a contract with the Transportation Command. We have received final decisions from the contracting officer, favorable final decisions, interpreting the contract the same way we do. And yet GSA is stepping in and interfering with that and saying, no, we're stuck in the middle between two agencies and GSA is asserting its right to subordinate Transcom's authority under the CDA. We have two years left in this contract. So we absolutely seek prospective relief and affecting ongoing relationships as found in the Hahn and Francis Hite decisions. I would also note that in the district court's analysis of the harm, the court came up with a 200 to one ratio of economic harm. What the court perceived would be our monetary relief. First of all, I think that this court's precedent says you're not supposed to look at it and speculate. Vietnam veterans even said that when money is automatic, if you have obtained an injunction or declaratory relief in district court and money is automatic, you still don't look at that. But the court looked only at the financial harm that we identified in our preliminary injunction motion seeking irreparable harm. We mentioned $187,000 of administrative costs that the ongoing audits were costing Crowley. We identified that number simply to show some irreparable harm and as part of the balance of harms analysis. The district court relied only on that number to say that our harm, our non-monetary harm was negligible by citing our monetary harm. The district court did not even look at the non-monetary harm that we addressed, including the desire and need for prospective relief, the impact to this of the ongoing effort. Just for the court's benefit, in the five months since we brought this suit, GSA has issued another 12,000 individual audit determinations, 12,000. It is an ongoing burden for Crowley to deal with that. It's diverting our ability to perform the contract and to spend resources where we need to. The district court did not consider any of that value. And I think when you look at the, well, go ahead. So, yes, I am also interested in how these tests work together, in deciding whether or not there's Tucker Act jurisdiction. And I'm wondering about the notion of whether or not the claims that you're bringing are actually contractual and what result from a determination, if we were to decide that they're essentially contractual, is it your position that the Tucker Act would still not apply under those circumstances? Well, I think the Tucker Act does have exclusive jurisdiction over contractual claims against the government. Our argument in this case is that this is, that our claim against GSA is not and cannot be contractual because GSA is not a party to any contract with Crowley. So I think this court's decision in Megapulse has made clear that some cases, some torts, for example, rely on the existence of a contract. And sometimes, and we sort of analogize our case to almost to a tortious interference type case, where a breach of contract, it might be an element of the action. So it's not just relevant, but essential, but it's a tort. It's not a case sounding in contract. Our allegation against GSA that they are violating the CDA's finality clause, if successful, would not compel GSA to comply with a GSA contractual obligation to Crowley because none exists. So our claim cannot be contractual as to GSA, even though it relates to a government contract that Crowley has. And I can conceive of a situation, maybe it's not the one that's here, in which there may be an essentially contractual claim, even if the defendant is not a party. So I wonder whether you need to go as far as saying, if the defendant is not a party, you could never find that there is an essentially contractual claim. Yeah, I don't know in that sort of, whether sort of a bright line rule would exist. I mean, certainly, without thinking about whether there would be type of, maybe if another agency was a beneficiary of the contract, sort of a third-party beneficiary theory. But in this case, GSA is not part of this contract. Crowley never agreed to enter into any agreement with GSA. And again, and I would emphasize that in the district court's decision below, the only decision, the only authority for the court's conclusion that our case here was essentially contractual was Spectrum Leasing. And that's the fundamental difference. Spectrum Leasing involved a contract with GSA. And in that case, I think Spectrum Leasing did try to artfully plead around the claims court jurisdiction by going to district court and to ultimately challenge the liquidated damages that GSA assessed against Spectrum under its contract. It was always a contract case. And GSA's obligation or right to the money was always based on its contract with Spectrum. None of that's true with our case here. I see that my time is over. Let me make sure my colleagues don't have additional questions for you. We'll give you a little time for rebuttal, Ms. McGowan. I do have a question about your alternative ultra-virus claim. Could you, don't spend a lot of time on it, but could you just address it? Sure, thank you, Your Honor. Just briefly, our view is that one of the elements for ultra-virus is that statutory preclusion of review is implied. That's what the district court found here. So if Crowley's claim is implied, is a, or I should say the Tucker Act impliedly precludes review in the district court under the APA, then that's the first element of an ultra-virus claim. And so the district court- What's the extreme error of law, the third column? What is the extreme error of law under your theory, the third column? The extreme error, sorry, error of law is the GSA's violation of the finality clause. It's extraordinary. This has never happened in our understanding. There's no reported case where another agency has done this. Not just auditing a CDA contract, but where a contracting officer under a CDA contract has issued final and conclusive determinations regarding the interpretation of the contract. And even in this case, Transcom even went and told GSA to stop auditing on that basis. So not only did he interpret the contract, he told GSA to stop and GSA is ignoring it. And GSA is continuing to do what they want to do. That's extraordinary. We're not aware of this ever happening. So I think if anything, there ought to be a basis to stop that under ultra-virus. All right, thank you. Thank you. Thank you, Mr. Boland. We'll hear from the government now. Mr. Hazel. Good morning. Excuse me. Good morning, your honors. May it please the court, Stephen Hazel for the government. This case is controlled by the test elaborated in Megapulse and Spectrum. That test does not look at whether a plaintiff can plead a breach of contract claim in claims court. The test looks at two factors, the source and the remedies requested in the district court process. One point. And here, both of those factors point towards claims court jurisdiction and only claims court jurisdiction. So first- So just to be clear, the government thinks that this claim could be brought in the claims court. Yes, your honor. And in fact, Crowley is currently litigating in claims court. No, but not against GSA. It is litigating against GSA. Well, the second count, that's true. But the second count of the amended complaint that was added, but that claim is mainly one that doesn't involve GSA as a contracting party. And my question is this particular complaint, the government would say this complaint could be filed in the claims court and the government wouldn't then go in claims court and say, this type of thing isn't within the claims court's jurisdiction. Your honor, it's true that if Crowley filed this exact complaint in claims court, there would be no jurisdiction in claims court over an APA claim. That's the same as was the case in Spectrum where there was no district court jurisdiction. It was an APA claim and the Spectrum plaintiff certainly couldn't have gone to claims court and brought that exact claim. They could have brought a different version of it. And in this case, Crowley has actually done that. They brought- What different version? I'm not sure I understand. I mean, in the Spectrum case, they just worked through artful pleading to try to squeeze it into the scenario that you're talking about. This seems to be an entirely separate harm that the plaintiff is trying to address through this kind of claim. With respect, your honor, that's not how I see this complaint. In both cases, Crowley is asking the district court and the claims court to resolve the same contract interpretation issues. Is this a contract that calls for Crowley to act as a carrier or freight forwarder, which would implicate the Transportation Act and whether the contract would otherwise allow GSA audits? So it's the same contract interpretation issues and the same relief that's available in both courts. If Crowley wins in claims court, in addition to getting the withheld contract payments back, the claims court also has authority under 1491A2 to issue an order directing GSA not to continue auditing these contracts. So the same contract interpretation issues in both courts. The government has never disputed jurisdiction in claims court. And in fact, we recently filed a motion for partial summary judgment in that court based on whether there was actually a breach of contract here. So allowing both cases to go forward would create a substantial risk of inconsistent judgments. And in fact, a risk of inconsistent readings of this same contract. So the government says things like the second count that was added in the amended complaint in the claims court that that's okay to bring in claims court. Your honor, you're referring to the Transportation Act count or the breach of contract? I think it was the transportation. I can't remember the particulars, but in the amended complaint in the claims court, there was a claim that was added against GSA. Yes, your honor. So I believe that is the Transportation Act count against GSA. And yes, we did not dispute jurisdiction over that count and we still do not. We've allowed the case to proceed on the merits. And so under this court's cases and megapulse and spectrum, the question isn't whether Crowley could bring in exactly the same claims in claims court. We think it's more than enough that they can bring these Transportation Act and breach of contract claim against Transcom in claims court and get not just adequate, but essentially identical relief to the relief that they- Mr. Hazel, in those cases, I understood megapulse and spectrum to be answering the question of whether or not the claims were essentially contractual. And I heard Mr. Boland say that in this case, the claim against GSA is not essentially contractual. Indeed, GSA is not in a contractual relationship with Mr. Crowley and his company. So I understand that you're suggesting that this case is like spectrum, but isn't that a crucial distinction that goes to the bottom line of those cases more so than the kinds of arguments that you're making about remedy or relief? No, Your Honor, I don't think so. Those cases don't ask whether there's a breach of contract claim. They just, they don't go into that inquiry at all. Isn't that necessary because they're about a statute that governs, that determines when there is jurisdiction in the claims court and the statutory provision at issue is about the claim being essentially contractual. So even if those cases don't put it in those terms, aren't we really talking about what the statute says belongs in the claims court because of its contractual nature? Your Honor, I think that's right. So just to go to the text of the Tucker Act a little bit, it covers claims founded on a contract with the United States. Here, it's undisputed that there's a contract with the United States. There's a contract between Crowley and Transcom. The question that's left is whether the claims here are founded on that government contract and Megapulse and Spectrum give us this two-part test, the source and remedy test for discerning whether these claims are founded on a contract. And maybe it would be helpful for me to just walk through this. I mean, the contract isn't just up there in some diffuse way that's relevant to the claim. Tortious interference with contract is related to a contract, but nobody thinks tortious interference with contract is a contract claim. And the words of Spectrum, the way the court set up the inquiry in Spectrum is both parties acknowledge resolution of this dispute turns upon whether Spectrum's claim is a contract dispute subject to the jurisdiction of the claims court under the Tucker Act. And then later on, the court says the Spectrum's, the gravamen of its complaint is that the government has breached the contract by wrongfully withholding payments due. And it seems difficult to say that about these claims against GSA. No, Your Honor, I disagree. I think that's a fair description of GS, excuse me, Crowley's claims here. I mean, this doctrine is all about substance of reform. And in this case, if this went back to district court, what the district court judge would need to do would be to interpret this contract, whether it allows GSA to perform audits or not. There's just no way the district court could get around those contract interpretation questions. While that might be true, Mr. Hazel, isn't that to the end of determining the kind of problem that Chief Judge Srinivasan points out? In other words, tortious interference is a tort that is related to contract and seems to be more of the thrust of what Mr. Crowley is claiming in this case rather than an actual violation of a term in the contract. Your Honor, tortious interference isn't a helpful analogy here. That tort presupposes that there is an interference, that GSA isn't authorized to audit the contract. That's a question yet to be answered here. Our position is that the contract gives GSA authority to audit it in multiple ways. I understand, in every case, in every case the merits come later in our evaluation. You're saying, no, there is no interference. I'm asking you, what is the nature of the claim? What he's claiming is the kind of thing that would be analogous to tortious interference as opposed to claiming, true or not, that there's a contract violation, right? Your Honor, I guess what I'm getting at with tortious interference is that the analogy assumes away the contract issues. I'm not suggesting that this court would resolve those issues in this appeal, but I think it's important for the court to note that they are part of the case and the district court would need to resolve them. But that's the case in every tortious interference case. I mean, in every tortious interference with a contract, you're gonna have these same issues. What does the contract say? Did the person really intervene? And yet somehow in jurisprudence, those kinds of claims are considered to be separate and apart from contract claims. And to the extent we have to have a contract claim in this case, I guess I don't understand why you're putting this case in the contract claim bucket as opposed to one that is more analogous to the kinds of tortious interference that don't give rise to Tucker Act jurisdiction. Your Honor, the reason we're putting it in the contract bucket is the same reason that the district court did. Because the ultimate source of the asserted rights is this contract with Transcom. Without it, there would just be no claims here at all. And because the remedy that's been requested here is essentially a remedy that will result in the return of withheld contract payments. So that's the megapulse and spectrum test. And that's why we believe this claim is essentially a contractual. I'm gonna get clarification on one matter, which is if, let's just assume that we think that in order for Tucker Act jurisdiction to be exclusive, that there has to be a version of the claim that could be brought in the claims court under the Tucker Act. And then to understand what the government's argument is as to what is the claim that would be brought within the claims court's jurisdiction under the Tucker Act, are you relying on the Transportation Act? Because I'm talking about a claim against GSA. And so it wouldn't be a breach of contract claim as I understand it, which would be Tucker Act jurisdiction, but that's not the kind of claim that we're talking about here. If we have to envision the claim that would be brought within the Tucker Act jurisdiction in the claims court, you're saying it's a Transportation Act claim against GSA? That's right, Your Honor. So both a breach of contract claim against Transcom and a Transportation Act claim against GSA, those are the two that Crowley has brought, both of those fall within the Tucker Act. Right, but I'm not talking about Transcom, I'm just talking about GSA, because the only claim that we have before us is one against GSA. And so as to that, the variant that would be brought in the claims court that would then occasion the notion that that jurisdiction's exclusive, ergo the district court here doesn't have jurisdiction, it would be not a breach of contract claim against GSA because GSA is not a contracting party. It would be the Transportation Act claim against GSA. That's right, Your Honor. So that's a claim that is already proceeding and that provides all the relief that Crowley is seeking here. And I'll just note very briefly that this court has always focused its analysis on the essence of the claim in district court and not on exactly how the claim might be translated into claims court or federal circuit jurisdiction. So our view is that that's the focus of the analysis here, not how it would translate. Mr. Hazel, I see that you're out of time, but I just wanted to understand the sort of other line of cases and how they fit into your argument. So are you, by focusing pretty much exclusively on Megapulse and Spectrum, are you conceding that the claims that have been brought against GSA in this case are not seeking monetary relief? Are you sort of giving up that part of the argument? No, Your Honor, absolutely not. In the context of this case, Megapulse's remedy prong and this line of cases, this sort of essentially monetary recovery, those two inquiries are either coextensive or very, very similar. In both cases, we're asking whether this is essentially a claim that's asking for the return of these withheld contract payments. If that's true, the remedy is essentially contractual and it's also an essentially monetary recovery. So we just see that second Megapulse prong and the sort of Kidwell test as coextensive in the context. You're rejecting Mr. Boland's, this is a prospective. We have thousands of interventions by GSA requiring audits and responses to which we have had to devote resources and we want the court to tell them to stop doing that. You don't see that as something separate and apart from an argument about allowing them to get the money that has been denied them in the course of this auditing procedure. Your Honor, if we look at this prospectively, the relief that Crowley has requested will result in full payment of these payments that they believe they're owed under the contract. So prospectively, they will continue to- What about the cost of overtime of the people who have to respond to the audits? That's not recovered in the amount, even if they win with respect to the audits themselves. Your Honor, all government contracts have administrative and monitoring costs. It just can't be the case that going to district court and requesting a declaratory relief that would give you those payments back just by suggesting that there may be sort of accompanying auditing and monitoring costs. Here, those costs are far lower than the benefit of the withheld contract payments. It just can't be the case that that's enough to get a contractor out of claims court and to be able to proceed in parallel litigation in both claims court and district court. And you see no additional administrative costs arising out of the conflict that Mr. Crowley and his company is facing between two different government agencies coming up with two different results on each one of these transactions. Your Honor, thank you for asking. I wanted to clarify that point. There's no conflict here. The contracting officer's final decision that Crowley references, that's a nullity at this point. Under the Contract Disputes Act, when a party challenges a contracting officer's decision, it's null and everyone starts from a blank slate. That's 7103G of the Contract Disputes Act. And we discuss both that statute and the relevant federal circuit authorities on page 25 of our brief. So that's a very important point. That- I'm sorry, I just wanna be clear. When a contractor disputes,  the dispute is coming from GSA. Does that matter? No, Your Honor. 7103G makes clear the decision is only binding unless there's a challenge in claims court. And Crowley chose to challenge this decision in claims court several months before it initiated this district court litigation. That's 7103G and the relevant federal circuit decision is Wilner and cited again on page 25 of our brief. Okay, thank you, Mr. Hazel. Let me make sure my colleagues don't have additional questions for you. No. Mr. Boland, we'll give you two minutes back for rebuttal. Okay, thank you, Your Honor. Just briefly, if I could just touch on a few points here on that last point from Mr. Hazel. We disagree. We did not initiate an action on TRANSCOM's interpretation of the contract and the contracting officer's determination that GSA's audits are not valid. The action we initiated is solely with respect to the part of the final decision that said that TRANSCOM can't pay the money because GSA took it. So that's the only dispute that we have under the CDA. And it would be illogical to say that in order for us to, you know, for Crowley to lose the favorable final and conclusive decisions of the contracting officer as to the interpretation of the contract merely because we have one part of the decision that needs to be, where there's disagreement. So we disagree on that point. Briefly, Your Honor, I mentioned section 14705. It's our alternative count in our claims court case. Just to be clear, that type of action which we brought merely as an alternative, that is limited to the recovery of charges. That does not allow us to sue GSA for violating the CDA's finality clause. We also don't agree that that act applies to us. We're not a common carrier. We're not acting as a freight forwarder as alleged in our complaint. And ultimately, this is a CDA contract. So 14705 is not available to us. The CDA is our remedy in claims court for money, you know, not 14705. The Federal Circuit's decision in Dalton has made that clear. You cannot have, the same contract cannot be subject to the CDA and the Transportation Act at the same time. But you brought the claim, right? In the claims court? Yeah. Count two, yes. Yes, we added that to our complaint as an alternative. And we made clear though that we're doing it only because of the Transportation Act's three or statute of limitations and just to preserve it as an alternative. But we disagree that it would apply. Mr. Boland, Mr. Hazel suggested that you could get all of the relief you're seeking in one form or another in the claims court. Do you agree with that or not? No, no, we disagree. I mean, the ultimate remedy in the claims court would be money eventually. But money that would already be taken, we would be deprived of our right today, our present right to the finality of the transcoms, the contracting officer's interpretation of the contract. And- Mr. Hazel says that as a auxiliary power, the claims court could enjoin GSA from continuing to operate in this way. Is he wrong about that? We believe that Mr. Hazel is wrong. The court does not have the ability to tell GSA what to do because that claim that we would have would be under the CDA. Our claim is against transcom. I mean, ultimately we think that transcom has allowed GSA to take the money. So transcom is ultimately responsible for making sure that we're paid under the contract. But the court's judgment in the claims court would be against transcom. And I know the government has mentioned the remand, the limited remand power of the court. But again, a remand does not direct an outcome. It sort of sends something back to an agency to go look at something again. But we do not believe that that would provide effectively. I'd also note that whether there's an adequate remedy is not really jurisdictional questions. It's a section 704 issue, which is not jurisdictional. Okay, thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Jackson